UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Case No. 5:11 CR 594** |
| | ) | |
| **Plaintiff,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **SAMUEL MULLET, SR., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Having been convicted by a jury on seven counts, including four counts of religiously motivated beard- and hair-cutting attacks, Defendant Samuel Mullet, Sr., now moves this Court, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for a judgment of acquittal or, in the alternative, for a new trial, pursuant to Rule 33.[1] Defendant's motion boils down to three arguments: the evidence at trial was insufficient to sustain a conviction; newly discovered evidence warrants a new trial; and the admission of certain pieces of evidence—namely an Associated Press article and evidence of Defendant's sexual relationship with one of his daughters-in-law—constituted a miscarriage of justice.

I. Legal Standard

A defendant seeking a judgment of acquittal bears a heavy burden, and the court views the evidence in a light most favorable to the Government and gives the Government the benefit

---

[1] Most of Samuel Mullet, Sr.'s co-defendants have joined in his motion. Their joinder is discussed below in Section V.

of all reasonable inferences.  United States v. Graham, 622 F.3d 445, 448 (6th Cir. 2010) (internal citations and quotations omitted).  The key question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  United States v. Fisher, 648 F.3d. 442, 450 (6th Cir. 2011) (internal quotations and citation omitted).

Motions for new trial are likewise disfavored, United States v. Willis, 257 F.3d 636, 645 (6th Cir. 2001), and may be granted only where substantial legal error has occurred, United States v. Munoz, 605 F.3d 359, 373 (6th Cir. 2010), or where newly discovered evidence would likely produce an acquittal.  United States v. Davis, 15 F.3d 526, 531 (6th Cir. 1994).  Again, the burden is on the defendant.  Id.

II. Insufficient Evidence

Defendant contends there was not enough evidence linking him to the beard- and hair-cutting attacks.  To that end, Defendant spends the bulk of his brief rehashing the points he made during closing argument.  But the jurors rejected his version of the facts, and their decision is presumed valid.

While it is true Defendant did not physically participate in any of the attacks, there was extensive evidence showing he was a member of the conspiracy the object of which was to commit them.  The Government's well-written opposition brief does an excellent job summarizing the key evidence of Defendant's involvement (See Doc. # 283, pp. 8-18), and the Court need not reiterate it.  Suffice it to say, the evidence at trial conclusively established that Defendant, as Bishop of Bergholz, ran his community with an iron fist—nothing of significance happened without his knowledge and approval.  Even if the Government proved nothing more than that Samuel Mullet, Sr., was told about the attacks in advance by his followers and then said or did nothing to stop or prevent them, or even voice his disapproval, a jury could conclude that he had joined the conspiracy and that he had Pinkerton liability for the acts of his co-conspirators.  United States v. Maliszewski, 161 F.3d 992, 1006 (6th Cir. 1998) (the agreement required for conspiracy need not be a formal agreement; rather, a tacit agreement or mutual

-2-

understanding is sufficient) (internal citation and quotations omitted); United States v. Ellzey, 874 F.2d 324, 328 (6th Cir. 1989) (an agreement "may be inferred from circumstantial evidence that can reasonably be interpreted as participation in a common plan....") (internal citation and quotations omitted).  Of course, there was substantial evidence that Samuel Mullet, Sr., did more than tacitly approve of the attacks; he affirmatively encouraged, aided, and agreed with his co-conspirators to commit them.  The jury also could have construed as admission of his involvement in the attacks Mullet, Sr.'s statements to the media and to his co-defendants over the phone while they were in jail.  It was the jury's prerogative to reject the explanation and characterization of the evidence that counsel makes in his motion and reply, and which he made at trial.

Since a jury's verdict is presumptively valid and the evidence against Defendant was strong, the Court denies Defendant's motion based on insufficient evidence.

III.  Newly Discovered Evidence

Defendant next argues that a new trial should be granted because of newly discovered evidence.  The supposedly new evidence is the Associated Press reporter's notes and tape recording of the interview he conducted with Defendant on October 10, 2011, which formed the basis of the reporter's article, a redacted version of which was admitted in evidence.  But this evidence is not new.  Defendant has known since October 10, 2011, what he said to the reporter.  And he presumably would have seen the reporter taking notes and would have noticed a tape recorder.  He could have sought to obtain the notes and recording via a subpoena duces tecum before or during trial.  See United States v. Hanna, 661 F.3d 271, 297 (6th Cir. 2011) (to succeed on a motion for a new trial based on newly discovered evidence, a defendant must show, among other things, that the new evidence was discovered after trial and could not have been discovered earlier with due diligence).

Moreover, Mullet, Sr., has not even made a representation, let alone a showing, of what the evidence would demonstrate.  No one has seen the notes or the recording, and Mullet, Sr.,

has not asserted that the notes or recording reflect any material difference from the evidence produced at trial. Accordingly, there is no reason to think the newly discovered evidence would likely produce an acquittal, which is a prerequisite to succeeding on a Rule 33 motion. Id.

IV. Miscarriage of Justice

Finally, Defendant argues a miscarriage of justice resulted from the admission of two pieces of evidence: the Associated Press article; and evidence of Defendant's sexual relationship with one of his daughters-in-law.

A. Associated Press Article

Defendant insists the Associated Press article was inadmissible hearsay that should have been excluded. Yet Defendant did not raise this objection at trial. (9/12/12 Tr., pp. 133–34.). In fact, at trial, when the Court asked if there was any objection to the Associated Press report, defense counsel was silent. (Id. at p. 302).

To be sure, before trial, Defendant made a motion *in limine* to exclude Defendant's statements to the media on the grounds that they were hearsay. In response the Government argued that the statements were admissible as a party admission under Rule 801(d)(2)(A) of the Federal Rules of Evidence. But Defendant never replied, either in writing or at the final pretrial conference at which the Court denied his motion, to clarify that he was objecting, not only to his statements, but also to the article itself. Nor did he demand the Government call the reporter to testify. For these reasons, the Court proceeded on the assumption that the only statement Defendant was objecting to was his own. United States v. Bostic, 371 F.3d 865, 871 (6th Cir. 2004) (a party must object with a reasonable degree of specificity to apprise the court of the true basis for his objection) (internal quotations and citations omitted).

What is more, Defendant never disputed, either in his motion *in limine*, at the final pretrial conference, at trial, or even now, the accuracy of the statements attributed to him by the reporter. This matters because the chief danger against which the hearsay rules and the Confrontation Clause of the Sixth Amendment guard is the inherent untrustworthiness of out-of-

-4-

court statements. See FED. R. EVID. 807(a) (permitting the admission of a hearsay statement not within one of the enumerated hearsay exceptions so long as the statement, first and foremost, has the "guarantees of trustworthiness"); Crawford v. Washington, 541 U.S. 36, 61 (2004) (noting that the ultimate goal of the Confrontation Clause is to ensure the reliability of the evidence).

Defendant was clearly never concerned about the trustworthiness of the media statements. He has never claimed that he did not make the statements attributed to him by the Associated Press article, nor that the reporter misquoted him. Rather, his complaint is that the Government took his statements in the article out of context and misconstrued them. Defendant is particularly concerned with one statement—"We know what we did and why we did it."—which the Government cited throughout trial as a confession of Defendant's guilt. Defendant, in his motion and during closing argument, argued that the statement was referring, not to any beard- or hair-cuttings, but rather to excommunications Mullet, Sr., imposed on other Amish.

What Mullet, Sr., overlooks, however, is that he had at his disposal the perfect remedy; he could have taken the witness stand and clarified what he meant. Of course, he was entitled to exercise his constitutional right not to testify, but he cannot now complain his comments were misconstrued. See United States v. Spaeth, 152 F. Supp. 216, 222 (D. Ohio 1957) (a defendant who chooses to exercise his constitutional right to remain silent ought not to complain about his failure to offer impeaching evidence at trial); United States v. Fassoulis, 203 F. Supp. 114, 119 (S.D.N.Y. 1962) ("[Defendant] had the opportunity to give his version of events...but declined to expose himself to cross-examination. A defendant may not engage in a strategem or trial tactic and when it fails have a retrial."). Alternatively, if he did not want to take the stand, he could have called the reporter to testify in the defense case.

In any event, whatever error that resulted from the admission of the article was harmless and did not affect Defendant's substantial rights. Numerous witnesses testified about his involvement, numerous incriminating statements—on top of the media statements—were

admitted in evidence, and, critically, Defendant never disputed the accuracy of the media statements—even though he would know better than anyone else what he said.

### B. Sexual Relationship with Daughter-in-Law

Defendant renews his objection, which he timely made at trial, to the testimony of Nancy Mullet, his daughter-in-law, describing their sexual relationship. He thinks the testimony was both improper character evidence and unfairly prejudicial.

The Court admitted the testimony because it showed the extent of Defendant's control over the members of his community, which was directly relevant to counter his defense that he had nothing to do with any of the attacks. Mullet, Sr., argues that what happened between him and his daughter-in-law, in 2008, was too remote in time to have any connection to the attacks, which took place in the fall of 2011. To the contrary, there was evidence that Mullet, Sr., continued having affairs with married congregants up to and including the time of the attacks in the fall of 2011. When, in the early-morning hours of November 23, 2011, federal law enforcement officers arrived to execute a search warrant at the home of Mullet, Sr., they found Defendant Lovina Miller, wife of Defendant Eli Miller, together with Mullet, Sr., in his bedroom and partially undressed. In fact, there was testimony that Lovina Miller had been living with Mullet, Sr., for some time.

The evidence of Samuel Mullet, Sr.'s sexual relationships with married congregants directly tied into the religious motivation for the attacks. Several witnesses testified that his family members—his sister, Barbara Miller, in particular—criticized him for his sexual conduct with married women in the community. Indeed, Ms. Miller and her husband, Marty, spent years trying to persuade their adult children to move out of Bergholz and escape the influence of Mullet, Sr., who viewed anyone who criticized, disagreed with, or disobeyed him as meriting punishment. The jury concluded that the hair- and beard-cutting carried out on Barbara and Marty Miller by their adult sons and daughters-in-law were religiously motivated.

In order to minimize the risk of unfair prejudice to Samuel Mullet, Sr., the Court gave a

limiting instruction to the jury on multiple occasions—when the evidence was admitted and in the final jury instructions.[2] To the same end, the Court did not permit any testimony about the particulars of the sexual conduct.

V. Joinder of Co-defendants

Most of Samuel Mullet, Sr.'s co-defendants[3] have joined in his motion, even though the arguments in Mullet, Sr.'s motion do not apply to them.  The whole point of the insufficiency-of-the-evidence argument is to distance Mullet, Sr., from his co-defendants, who, nobody disputes, physically participated in and were present at the attacks.  Neither do the remaining two arguments—which have to do with the Associated Press article and the testimony about his sexual relationships with married congregants—pertain to the co-defendants, for the evidence was offered only against Mullet, Sr.  Furthermore, the co-defendants have added nothing to Mullet, Sr.'s analysis—no new arguments or evidence—just a bare-bones request to join in his motion.

VI. Conclusion

For the foregoing reasons, Defendant's motion (Doc. # 264) is denied as to both Samuel

---

[2]The jury instruction reads in full:

You have heard testimony that defendant Samuel Mullet, Sr., may have engaged in acts other than the ones charged in the Superseding Indictment, specifically, that he may have engaged in sexual conduct with married women in the Bergholz Community.  You may consider this evidence only as it relates to the nature of the religious disputes between the Bergholz Community and other Amish practitioners and to Samuel Mullet, Sr.'s, intent, motive, plan, or knowledge with respect to the acts charged in the Superseding Indictment.  You must not consider it for any other purpose.

Remember that Samuel Mullet, Sr., and all the other defendants are on trial only for the crimes charged in the Superseding Indictment, not for any other acts.  Samuel Mullet, Sr., is not charged with any sex crime.  Do not return a guilty verdict unless the government proves the crimes charged in the Superseding Indictment beyond a reasonable doubt.

[3]Lester Miller (Doc. # 266), Elizabeth Miller (Doc. # 267), Lovina Miller (Doc. # 268), Anna Miller (Doc. # 269), Emma Miller (Doc. # 270), Lester Mullet (Doc. # 271), Kathryn Miller (Doc. # 272), Linda Schrock (Doc. # 273), Raymond Miller (Doc. # 275), Emanuel Schrock (Doc. # 278), and Freeman Burkholder (Doc. # 281).

Mullet, Sr., and the co-defendants who have joined in the motion.

**IT IS SO ORDERED.**

                                                  */s/ Dan A. Polster 12/6/12*
                                                 **Dan Aaron Polster**
                                                 **United States District Judge**