**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SAMUEL MULLET, SR., ) | CASE NO. 5:11CR594; 5:18CV94 |
| ) | |
| Petitioner, ) | JUDGE DAN AARON POLSTER |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

Before the Court is Petitioner Samuel Mullet, Sr.'s Motion to Vacate Under 28 U.S.C. § 2255 (the "Motion"). Doc #: 750.[1] For the following reasons, Mullet's Motion is **DENIED**.

**I.    Background**

Mullet was indicted on December 20, 2011 for charges stemming from a series of beard and hair cutting attacks on Amish members and leaders. Doc #: 10; *see also* March 28, 2012 Superseding Indictment, Doc #: 87. On September 20, 2012, a jury found Mullet guilty of Count 1, Conspiracy (18 U.S.C. § 371), Counts 2, 4-6, violations of the Hate Crimes Act ("HCA") (18 U.S.C. §§ 249(a)(2) and 2), Count 8, Obstruction (18 U.S.C. §§ 1519 and 2), and Count 10, Making False Statements (18 U.S.C. § 1001). Doc #: 230. The jury found two objects

---

[1] The ECF citations correspond with the criminal case's docket, 5:11CR594.

of the conspiracy in Count 1: (1) to willfully cause bodily injury to the alleged victims; and (2) to knowingly alter, conceal, or cover up evidence. *See* Doc #: 543 at 2576. Mullet was sentenced on February 8, 2013 to 15 years imprisonment. Doc #: 394. He appealed his HCA-related convictions ("HCA Convictions"), including the HCA-related first object of Count 1's conspiracy charge. Mullet did not initially appeal his three obstruction-related convictions (the "Obstruction Convictions"): (1) Count 1's second object, conspiring to conceal evidence, in violation of 18 U.S.C. § 371; (2) Count 8, concealing evidence, in violation of 18 U.S.C. § 1519 and 2; and (3) Count 10, lying to the FBI, in violation of 18 U.S.C. § 1001. The Sixth Circuit reversed Mullet's HCA Convictions on August 27, 2014 and remanded the case back to the Court for a new trial. Doc #: 557.

The Government declined to re-try Mullet for the HCA charges and the Court re-sentenced him to 129 months imprisonment for the remaining Obstruction Convictions. Doc #: 732. On his second appeal, Mullet challenged the Obstruction Convictions and his sentence. Among other challenges to his sentence, Mullet challenged the four-level leadership enhancement to his guideline calculation, arguing that there was no evidence of his role in concealing evidence. Doc #: 735 at 13. The Sixth Circuit affirmed Mullet's convictions because he failed to challenge them in his first appeal. *Id.* at 4. The Sixth Circuit also affirmed Mullet's sentence and the leadership enhancement because "[t]he district court had ample reason to believe that [Mullet] played a starring role in [the concealing evidence] conspiracy." *Id.*

## II.    Standard

Pursuant to 28 U.S.C. § 2255, a person in federal custody may move the Court to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255. "A motion brought under § 2255 must

allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir.2001)). Ineffective assistance of counsel claims are sufficient bases to bring a collateral proceeding under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). A defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984) (emphases added). "If it is easier [for the Court] to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 670. To establish prejudice on a § 2255 motion, Mullet must show a reasonable probability that, but for his counsel's errors, his sentence would have been different. *Id.* at 694.

### III. Analysis

Mullet makes four claims of ineffective assistance of counsel. Mullet claims that his counsel was ineffective by: (1) failing to argue during his second appeal that admission of evidence of Mullet's sexual misconduct was unfairly prejudicial; (2) failing to object at trial and in his second appeal to the admission of inflammatory expert testimony; (3) failing to object at trial to the admission of a newspaper article that violated Mullet's Confrontation Clause rights; and (4) failing to appeal Mullet's conviction on Counts 1 and 8 on sufficiency of the evidence grounds in the first appeal. The Court will address each of these arguments in turn.

### A. Admission of 404(b) Evidence of Sexual Misconduct

Mullet argues that the Court improperly permitted the Government to introduce sexual misconduct evidence at trial. Mot 9. He objected to the admission of this evidence in pretrial motions and at trial, and he raised the issue on his first appeal.[2] *See* Doc #: 557 at 40-41. Mullet now argues that his counsel was ineffective for failing to raise this issue on the second appeal. Mot 9. To establish ineffective assistance of *appellate* counsel, a defendant must show a reasonable probability that but-for his counsel's error, he would have prevailed on his appeal. *Smith v. Robbins*, 528 U.S. 259, 287 (2000). This Mullet cannot do.

In his first appeal, Mullet argued that the Court improperly admitted evidence of his sexual misconduct as a challenge to his HCA convictions. At trial, the Court allowed the Government to introduce evidence of Mullet's sexual misconduct under Rule 404(b) for the limited purpose of establishing the degree of control that Mullet had over the people in his community. Doc #: 314 at 53. Mullet directed married women in his community to engage in sexual relations with him as a form of "marital counseling." *Id.* at 52. Evidence that Mullet's community members acquiesced to Mullet's marital counseling showed the almost absolute control he had over them. This level of control tied directly into the Government's theory of the case: Mullet ordered the beard and hair cutting attacks to retaliate against Amish members and leaders who countermanded Mullet's decree. *Id.* at 54. The Government was prohibited from admitting this evidence for any other purpose. *Id.* at 53. Thus, the Court properly admitted evidence of Mullet's sexual misconduct under Rule 404(b).

---

[2]The Sixth Circuit declined to address the issue during the first appeal because it reversed Mullet's HCA Convictions on other grounds.

Most importantly, evidence of Mullet's sexual misconduct was never admitted on the obstruction-related charges; the jury was directed not to consider that evidence in relation to those charges. The Court issued a limiting instruction to the jury directing them to "consider this evidence [of Mullet's sexual misconduct] only as it relates to the nature of the religious disputes between [Mullet's] community and other Amish practitioners, and to Samuel Mullet, Senior's intent, motive, plan, or knowledge with respect to the acts charged in the superseding indictment." Doc #: 542 at 2313. Jurors are presumed to follow instructions. *Caldwell v. Bell*, 288 F.3d 838, 845 (6th Cir. 2002). Thus, the jury did not consider evidence of Mullet's sexual misconduct to convict him of the obstruction-related charges.

During Mullet's first appeal, the Sixth Circuit did not address Mullet's argument against the admission of evidence of his sexual misconduct because it reversed his HCA Convictions on other grounds. Doc #: 557 at 23. Mullet's counsel did not argue in the first appeal that the sexual misconduct evidence required reversal of the Obstruction Convictions because he knew that the jury only considered this evidence as it related to the HCA charges. The Government chose not to re-try the HCA-related charges so Mullet's re-sentencing and subsequent second appeal were limited to his Obstruction Convictions. Mullet cannot show that he would have prevailed on the second appeal had he raised the sexual misconduct evidence issue because that evidence was not used to establish Mullet's Obstruction Convictions. Accordingly, Mullet cannot establish that his counsel was ineffective for failing to raise this issue in the second appeal.

### B. Admission of Amish Expert Testimony

Mullet next argues that his counsel was ineffective for failing to object at trial and in the

second appeal to Amish Expert Dr. Kraybill's testimony that characterized Mullet's community as a cult and unlike typical Amish practices. Mot. 15. The Court limited Dr. Kraybill's testimony on direct examination–upon defense counsel's request–to general Amish practice–he was not to characterize the defendants or give his opinion of them. *See* Doc #: 314. Mullet identifies three instances where Dr. Kraybill specifically testified about Mullet's community. *See* Mot. 15. In each of these three examples, Dr. Kraybill responded to questions from a co-defendant's counsel. The Court's pre-trial instruction restricted the Government from using Dr. Kraybill's testimony to characterize the defendants; Dr. Kraybill was the Government's expert witness. Doc #: 314 at 77. The Court's instruction was not intended to restrict defense counsel from eliciting testimony from Dr. Kraybill that they believed would help the defense. Mullet's counsel's decision not to object to his co-defendant's line of questioning was a sound legal strategy: it avoided the appearance of division and conflict between the defendants.

The Court also finds that Mullet's counsel's decision not to raise the issue in the second appeal was a practical and sound one. During the second appeal, Mullet challenged his Obstruction Convictions. Dr. Kraybill's testimony related to Mullet's HCA Convictions that the Government declined to re-try. Mullet's counsel correctly limited the second appeal to issues that related to the remaining convictions. Mullet cannot show that his counsel's strategy at trial and in the second appeal was unreasonable. Accordingly, he cannot establish an ineffective assistance of counsel claim for the admission of Dr. Kraybill's testimony.

**C. Admission of the Associated Press Article**

Mullet next argues that his counsel was ineffective for failing to object at trial to the admission of an Associated Press article (the "Article") that violated Mullet's Confrontation

Clause rights. Mot. 17. Mullet argues that his alleged statement in the Article that "we know what we did and why we did it" was taken out of context several times during the Government's opening and closing arguments. *Id.* The Government introduced the Article at trial and Mullet's counsel did not object to it on hearsay or Confrontation Clause grounds. Mot. 18. Although Mullet argues that this was prejudicial error, it appears to have been the product of sound trial strategy. Had Mullet objected to the Article's admission, the Government would have called the reporter to the stand, and Mullet's statement "we know what we did and why we did it" would have been admitted." In addition to drawing further attention to this damaging admission, the reporter might have testified to other incriminating statement Mullet made. By not objecting to the Article's admission, Mullet's counsel prevented the Government from introducing further damaging testimony against him. Further, Mullet does not contend in his Motion that the Article's author misquoted him. He has not attached an affidavit from the reporter, or referred to any other evidence, that suggests that had the reporter taken the stand, the reporter would have said that Mullet did not make the statement. Since Mullet cannot show prejudice he cannot base an ineffective assistance of counsel claim on the grounds that his counsel failed to object to the admission of the Article.

### D.    Sufficiency of the Evidence on Counts 1 and 8[3]

Mullet argues that his counsel was ineffective for failing to raise sufficiency of the evidence arguments for Counts 1 (conspiring to conceal evidence) and 8 (concealing evidence) during the first appeal. Mot. 19. To establish the prejudice prong of an ineffective assistance claim, Mullet must show that he would have likely prevailed on his sufficiency of the evidence

---

[3]Mullet does not challenge his Count 10 conviction on sufficiency of the evidence grounds.

arguments had his counsel raised them in the first appeal. He cannot.

When the sufficiency of the evidence is challenged, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Swidan*, 888 F.2d 1076, 1080 (6th Cir. 1989) (citation and internal quotation omitted). Count 1 alleged that Mullet conspired to conceal evidence, Sup. Indict. 3-4, and Count 8 alleged that Mullet obstructed justice by concealing a camera used to photograph his victims, *Id.* at 20. To establish that a defendant is guilty of conspiracy under 18 U.S.C. § 371, the Government must prove three elements: "(1) the existence of an agreement to violate the law; (2) knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy." *United States v. Blackwell*, 459 F.3d 739, 760 (6th Cir.2006). For an obstruction charge, the Government must prove that (1) the defendant concealed a tangible object; (2) the defendant did so knowingly; and (3) the defendant intended to obstruct a federal investigation. *See* 18 U.S.C. § 1519. Sufficient evidence exists to establish each of these elements beyond a reasonable doubt.

Almost everyone in Mullet's community knew about the disposable camera that was used to document each of Mullet's victims. Government witness Christ Mullet testified that Defendant Eli Miller told him about the camera and the victims' photos taken with the camera. Doc #: 529 at 842. He testified that he and others in the community wanted to see the victims photos. *Id.* at 843. Government witness Daniel Shrock also testified that the victims' photos were taken to show everyone in Mullet's community. Doc #: 537 at 1365. Several community members knew where the camera containing the photos was kept: Shrock testified that he knew

that the camera containing the photos was in a drawer in Eli Miller's room. *Id.* at 1392.

When the local authorities and the FBI got involved the case, Mullet and several other community members discussed the camera and agreed to conceal it from the authorities. Shrock testified that after the FBI came to his house, Eli Miller called home and told his wife, Defendant Lovina Miller, that he wanted her to get rid of the camera. *Id.* Shrock's mother, Defendant Linda Shrock, told him that Eli wanted the camera hidden. *Id.* at 1393. Shrock's mother told him to give the camera to Johnny Mast, another member of Mullet's community. *Id.* at 1394. Shrock believed he was told to give the camera to Mast "[s]o the FBI couldn't find it." *Id.* Mast corroborated Shrock's version of events. Doc #: 539 at 1505. He testified that Shrock told him to destroy or hide the camera. *Id.* at 1614. After Mast got the camera from Shrock, he buried it on Mullet's property. *Id.* at 1530. Mast knew at the time that the FBI was interested in obtaining the camera. *Id.* at 1614.

The Government presented evidence that Mullet knew about and was involved with the plan to hide the disposable camera from the FBI. Recorded jail calls captured Mullet telling Lester Miller that "he would take care of the camera." Doc #: 540 at 1806-07. Mullet also discussed the camera with Levi Miller. *Id.* at 1807. Based on the testimony and recorded jail calls, a reasonable trier of fact could have found beyond a reasonable doubt that Mullet conspired to conceal evidence from the FBI and did conceal evidence from the FBI. Multiple members of Mullet's community, including Mullet himself, were involved in the plan to conceal the camera from the FBI. Thus, Mullet cannot show prejudice required to establish an ineffective assistance claim.

### E. The Cumulative Effect of the Errors

Mullet lastly argues that the "cumulative effect" of his counsel's errors deprived him of a fair trial in violation of his due process rights. Because the Court determines that none of his counsel's "errors" were prejudicial, the Court does not find that Mullet was denied a fair trial. To the contrary, Mullet was represented by seasoned and effective trial and appellate counsel.

### F. Evidentiary Hearing Request

The Court finds that Mullet's claims for ineffective assistance of counsel are conclusively refuted by the record. Therefore, Mullet is not entitled to an evidentiary hearing.

## IV. Conclusion

For the reasons stated above, Mullet's Motion to Vacate is **DENIED.**

**IT IS SO ORDERED**.

*/s/ Dan A. Polster    May 2, 2018*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**